IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HENRIETTA MIDDLETON,** | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.:  1:20-cv-03536-ELH |
| **SERGEANT MARLON KOUSHALL,** *et al.* | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

TABLE OF EXHIBITS ........................................................................x

INTRODUCTION ...............................................................................1

STATEMENT OF FACTS FOR SUMMARY JUDGMENT ....................................2

    I.     THE AUGUST 26, 2018 INCIDENT ..................................................2

    II.    BPD POLICIES IN EFFECT IN 2018 ................................................5

    III.   INTERNAL INVESTIGATION AND CRIMINAL CHARGING OF
         PLAINTIFF.............................................................................6

    IV.   PROCEDURAL BACKGROUND........................................................8

STANDARD OF REVIEW ...................................................................9

ARGUMENT .................................................................................10

    I.     SERGEANT KOUSHALL IS ENTITLED TO QUALIFIED
         IMMUNITY ON PLAINTIFF'S EXCESSIVE FORCE CLAIM UNDER
         § 1983 CLAIM (COUNT VII).......................................................10

         A.   Sergeant Koushall's Conduct Did Not Violate Clearly
             Established Law ...............................................................12

         B.   Even If Sergeant Koushall's Conduct Violated Clearly
             Established Law, Plaintiff Was Not "Seized" By Excessive Force
             in Violation of Her Fourth Amendment Rights ........................15

    II.    SERGEANT KOUSHALL IS ENTITLED TO JUDGMENT AS A
         MATTER OF LAW ON PLAINTIFF'S UNLAWFUL SEIZURE
         CLAIMS UNDER §1983 (COUNT VII) BECAUSE THERE WAS
         PROBABLE CAUSE TO ARREST PLAINTIFF ..............................19

    III.   OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT AS A
         MATTER OF LAW ON PLAINTIFF'S ILLEGAL USE OF
         PROSECUTION UNDER § 1983 (COUNT VII) ............................21

         A.   There is No Genuine Issue of Material Fact That Sergeant
             Koushall Had Probable Cause to Charge Plaintiff and He Did Not
             Act With Malice................................................................21

         B.   There is No Genuine Issue of Material Fact That Lieutenant Yerg
             Did Not Continue or Institute a Criminal Proceeding Against
             Plaintiff .........................................................................25

    IV.   OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT AS A
         MATTER OF LAW ON PLAINTIFF'S STATE CONSTITUTIONAL
         CLAIMS (COUNT IV).......................................................26

V.     SERGEANT KOUSHALL IS ENTITLED TO SUMMARY
       JUDGMENT ON STATE LAW TORT CLAIMS (COUNTS I, II, AND
       VI) BECAUSE THERE WAS A LEGAL JUSTIFICATION FOR HIS
       USE OF FORCE AND TO PLACE PLAINTIFF UNDER ARREST ..............26

       A.     Sergeant Koushall Is Entitled To Judgment As A Matter Of Law
              For Battery Because His Use of Force Was Justified (Count I) .............27

       B.     Sergeant Koushall Is Entitled to Judgment As A Matter Of Law
              For False Imprisonment and False Arrest Because He Had
              Probable Cause To Arrest Plaintiff (Counts II and VI) .........................28

VI.    OFFICER DEFENDANTS ARE ENTITLED TO SUMMARY
       JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION AND
       ABUSE OF PROCESS CLAIM (COUNT III)....................................................30

       A.     Officer Defendants Are Entitled To Judgment As A Matter Of
              Law on Plaintiff's Common Law Malicious Prosecution Claim............30

       B.     To The Extent Plaintiff Brings An Abuse Of Process Claim,
              Officer Defendants Are Entitled To Judgment As A Matter Of
              Law .............................................................................................................31

VII.   OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT AS A
       MATTER OF LAW ON PLAINTIFF'S CONSPIRACY CLAIMS
       (COUNT IX- X)..................................................................................................32

       A.     There Is No Genuine Issue of Material Fact That Officer
              Defendants Were Motivated By Personal Gain Or That Their
              Actions Were Unauthorized......................................................................33

       B.     The Conspiracy Claims Fail Because Plaintiff Has Offered No
              Evidence to Create a Genuine Issue of Fact For Trial That Officer
              Defendants Acted in Concert. ..................................................................37

       C.     No Genuine Issue of Any Material Fact That Sergeant Koushall
              and Lieutenant Yerg Had Discriminatory Motivation ...........................39

CONCLUSION.....................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 9

*Bailey v. Kennedy*,
    349 F.3d 731 (4th Cir. 2003) ................................................................................. 18

*Baltimore City Police Department v. Potts*,
    468 Md. 265 (2020) ............................................................................................... 36

*Barnes v. Montgomery Cnty., Md.*,
    798 F. Supp. 2d 688 (D. Md. 2011) ...................................................................... 32

*Barrett v. PAE Government Services, Inc.*,
    975 F.3d 416 (4th Cir. 2020) ................................................................................. 11

*Bland v. Roberts*,
    730 F.3d 368 (4th Cir. 2013) ................................................................................. 10

*Boyle v. Azzari*,
    No. GJH-22-0884, 2023 WL 144577 (D. Md. Jan. 10, 2023) ............................... 27

*Bradley v. Baltimore City Police Dep't*,
    2023 WL 6381442 (D. Md. Sept. 28, 2023) (dismissing ....................................... 31

*Brown v. Gilmore*,
    278 F.3d. 362 (4th Cir. 2002) .......................................................................... 10, 17

*Jones v. Buchanan*,
    325 F.3d 520 (4th Cir. 2003) .......................................................................... 12, 16, 18

*Bumgardner v. Taylor*,
    No. RDB-18-1438, 2019 WL 1411059 (D. Md. March 28, 2019) .......................... 36

*Burgess v. Baltimore Police Dep't*,
    No. CV RDB-15-0834, 2016 WL 795975 (D. Md. Mar. 1, 2016) ........................... 33

*Carter v. Aramark Sports & Ent. Servs., Inc.*,
    153 Md. App. 210 (2003) ....................................................................................... 31

*Carter v. Khan*,
    No. 1:15-CV-00572 JCC, 2015 WL 6738607 (E.D. Va. Nov. 4, 2015) ................... 28

*D.C. v. Wesby*,
    583 U.S. 48 (2018) ................................................................................................. 12

*Devenpeck v. Alford,*
   543 U.S. 146 (2004) ........................................................................................ 20

*Dobbs v. Townsend,*
   416 F. Supp. 3d 441 (D. Md. 2019) .............................................................. 28

*E.W. by & through T.W. v. Dolgos,*
   884 F.3d 173 (4th Cir. 2018).......................................................................... 13

*Edwards v. City of Goldsboro,*
   178 F.3d 231 (4th Cir. 1999).......................................................................... 10

*Garcia-Perlera v. State,*
   197 Md. App. 534 (2011)............................................................................... 28

*Giannasca v. Bank of Am., N.A.,*
   No. CV ELH-17-2110, 2018 WL 6046814 (D. Md. Nov. 19, 2018)...................... 37

*Goldstein v. Chestnut Ridge Volunteer Fire Co.,*
   218 F.3d 337 (4th Cir. 2000).......................................................................... 10

*Gomez v. Atkins,*
   296 F.3d 253 (4th Cir. 2002).......................................................................... 11

*Goode v. Am. Veterans, Inc.,*
   874 F. Supp. 2d 430 (D. Md. 2012) .............................................................. 10

*Graham v. Connor,*
   490 U.S. 386 (1989)................................................................................. 16, 27

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ...................................................................................... 11

*Henry v. Purnell,*
   501 F.3d 374 (4th Cir. 2007).......................................................................... 11

*Henry v. Purnell,*
   652 F.3d 524 (4th Cir. 2011).......................................................................... 15

*Heron v. Strader,*
   361 Md. 258 (2000)................................................................................. 21, 28

*Hicks v. Ferreyra,*
   396 F. Supp. 3d 564 (D. Md. 2019) .......................................................... 34, 36

*Higginbotham v. Brauer,*
   2020 WL 4569520 (D. Md. Aug. 7, 2020)...................................................... 22

*Hinkle v. City of Clarksburg,*
    81 F.3d 416 (4th Cir. 1996) ............................................................................ 37

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ....................................................................................... 12

*Humphrey v. Herridge,*
    103 Md. App. 238 (1995) ............................................................................... 31

*Hupp v. Cook,*
    931 F.3d 307 (4th Cir. 2019) .......................................................................... 19

*Jha v. XCube Rsch. & Dev., Inc.,*
    No. 8:18-CV-00364-PX, 2018 WL 4538552 (D. Md. Sept. 20, 2018) ................... 30

*Jones v. Chapman,*
    No. ELH-14-2627, 2017 WL 2472220 (D. Md. June 7, 2017) ...................... 16, 18

*Jones v. Fam. Health Centers of Baltimore, Inc.,*
    135 F. Supp. 3d 372 (D. Md. 2015) ................................................................ 27

*Lambert v. Williams,*
    223 F.3d 257 (4th Cir. 2000) ..................................................................... 21, 30

*Lloyd v. Gen. Motors Corp.,*
    397 Md. 108 (2007) ....................................................................................... 37

*Maciariello v. Sumner,*
    973 F.2d 295 (4th Cir. 1992) .......................................................................... 11

*Malley v. Briggs,*
    475 U.S. 335 (1986) ....................................................................................... 11

*Martin v. Conner,*
    882 F. Supp. 2d 820 (D. Md. 2012) ............................................................ 21, 32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ......................................................................................... 9

*Mayo-Parks v. United States,*
    384 F. Supp. 2d 818 (D. Md. 2005) .................................................................. 9

*Metro Media Ent., LLC v. Steinruck,*
    912 F. Supp. 2d 344 (D. Md. 2012) ................................................................ 32

*Michigan v. DeFillippo,*
    443 U.S. 31 (1979) ........................................................................................ 29

*Middleton v. Baltimore City Police Dep't,*
   No. CV ELH-20-3536, 2022 WL 268765 (D. Md. Jan. 28, 2022) ................................... 25, 26

*Miles v. DaVita Rx,* LLC,
   962 F. Supp. 2d 825 (D. Md. 2013) ......................................................................... 19

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) .................................................................................................. 10

*Montgomery Ward v. Wilson,*
   339 Md. 701 (1995) .................................................................................................. 28

*Moore v. Peitzmeier,*
   No. TDC-18-2151, 2020 WL 94467 (D. Md. Jan. 4, 2020) ................................. 20, 29

*Morgan v. Prince George's Cnty., Md.*,
   No. CIV.A AW-09-1584, 2010 WL 2891700 (D. Md. July 20, 2010) ........................... 28, 29

*Nelson Radio & Supply Co. v. Motorola, Inc.*,
   200 F.2d 911 (5th Cir. 1952) ................................................................................. 33

*Nexus Servs., Inc. v. Vance*,
   No. 5:17- CV-00072, 2018 WL 542977 (W.D. Va. Jan. 24, 2018) ......................... 10

*Okwa v. Harper*,
   360 Md. 161 (2000) .................................................................................................. 27

*One Thousand Fleet Ltd. P'ship v. Guerriero,*
   346 Md. 29 (1997) .................................................................................................. 32

*Park v. Shiflett,*
   250 F.3d 843 (4th Cir. 2001) ............................................................................. 11, 15

*Pearson v. Callahan,*
   555 U.S. 223 (2009) .................................................................................................. 10

*Pegues v. Wal-Mart Stores, Inc.*,
   63 F. Supp. 3d 539 (D. Md. 2014) ......................................................................... 28

*Pritchett v. Alford,*
   973 F.2d 307 (4th Cir.1992) .................................................................................. 19

*Robinson v. Prince George's Cnty., Md.*,
   No. CIV. PJM 09-181, 2011 WL 1743263 (D. Md. May 6, 2011) ......................... 27

*Rogers v. Pendleton*,
   249 F.3d 279 (4th Cir. 2001) ............................................................................. 19, 20

*Rowland v. Perry,*
   41 F.3d 167 (4th Cir. 1994) ................................................................................. 27

*Sammons v. McCarthy,*
   No. ELH-20-3010, 2022 WL 2065976 (D. Md. June 8, 2022) ................................ 11

*Saucier v. Katz,*
   533 U.S. 194 (2001) ............................................................................................. 17

*Schultz v. Braga,*
   455 F.3d 470 (4th Cir. 2006) ................................................................................ 15

*Selman v. Am. Sports Underwriters, Inc.,*
   697 F. Supp. 225 (W.D.Va.1988) ......................................................................... 34

*Simmons v. Poe,*
   47 F.3d 1370 (4th Cir.1995) ........................................................................... 39, 40

*Smith v. Munday,*
   848 F.3d 248 (4th Cir. 2017) ................................................................................ 28

*Smithfield Packing Co., Inc. v. Evely,*
   169 Md. App. 578 (2006) ...................................................................................... 25

*Spry v. State,*
   396 Md. 682 (2007) .............................................................................................. 22

*Talley v. AnneArundel Cnty., Maryland,*
   No. CV RDB-21-347, 2021 WL 4244759 (D. Md. Sept.17, 2021) ................... 30, 36

*Tavakoli-Nouri v. State,*
   139 Md. App. 716, 779 A.2d 992 (2001) ............................................................... 27

*Tennessee v. Garner,*
   471 U.S. 1 (1985) ................................................................................................. 16

*Thomas v. Holly,*
   533 F. App'x 208 (4th Cir. 2013) ..................................................................... 15, 19

*Tolan v. Cotton,*
   572 U.S. 650 (2014) ............................................................................................... 9

*United States v. Aparicio-Soria,*
   740 F.3d 152 (4th Cir. 2014) ................................................................................ 23

*United States v. Dickerson,*
   27 F. App'x 236 (4th Cir. 2001) ............................................................................ 29

*Valladares v. Cordero,*
  552 F.3d 384 (4th Cir. 2009) ................................................................... 16, 17, 18

*Veney v. Ojeda,*
  321 F. Supp. 2d 733 (E.D. Va. 2004) ................................................................ 37, 39

*Victors v. Kronmiller,*
  553 F. Supp. 2d 533 (D. Md. 2008) ...................................................................... 39

*Walker v. Am. Sec. & Tr. Co. of Washington, D. C.,*
  237 Md. 80 (1964) ........................................................................................... 30

*Wallace v. Poulos,*
  861 F. Supp. 2d 587 (D. Md. 2012) ................................................................. 19, 20

*Walters v. McMahen,*
  795 F. Supp. 2d 350 (D. Md. 2011) ................................................................. 33, 34

*White v. City of Greensboro,*
  532 F. Supp. 3d 277 (M.D.N.C. 2021) ................................................................... 10

*Williams v. State,*
  435 Md. 474 (2013) ......................................................................................... 23

*Wilson v. Flynn,*
  429 F. 3d 465 (4th Cir. 2005) ............................................................................. 18

*Wilson v. Layne,*
  526 U.S. 603 (1999) ........................................................................................ 15

*Wilson v. Prince George's County,*
  893 F.3d 213 (4th Cir. 2018) ............................................................................. 11

*Wood v. Palmer Ford, Inc.,*
  47 Md. App. 692 (1981) .................................................................................... 32

Statutes

42 U.S.C. § 1983 ............................................................. 9, 10, 11, 12, 14, 21, 24, 26, 30

42 U.S.C. § 1985(1) ............................................................................................. 34

42 U.S.C. § 1985(3) ................................................................................ 9, 32, 39, 40

Md. Code Ann., Crim. §10-201(c)(2) .................................................................... 7, 22

Md. Code Ann., Crim § 10-201(c)(3) ............................................................... 7, 21, 22

Md. Code Ann., Crim. § 3-203 ........................................................................... 7, 20

Md. Code Ann., Crim. § 9-408 ........................................................................... 7, 23

U.S. Const. amend. IV ........................................................................................ 19

Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 25

Fed. R. Civ. P. 56 ................................................................................................. 1

**TABLE OF EXHIBITS**

| Exhibit No. | Description | Page(s) |
|:---:|:---|:---|
| 1 | Henrietta Middleton Deposition | 2, 4, 5, 6, 7, 8, 14, 18, 22, 23, 24, 26, 38, 40 |
| 2 | Marlon Koushall Deposition | 2, 3, 4, 6, 7, 13, 16, 17, 18, 19, 22, 23, 24, 29, 35, 37, 38 |
| 3 | Use of Force Report (April 6, 2020) | 2, 4, 5, 8, 13, 14, 16, 29 |
| 4 | Photograph | 2, 16, 19 |
| 5 | CCTV | 3, 13, 16, 19, 22 |
| 6 | Photograph | 3 |
| 7 | Photograph | 3 |
| 8 | Sergeant Antwan Davis' Body Worn Camera | 3, 18 |
| 9 | Jason Yerg Deposition | 4, 6, 7, 8, 26, 35, 37, 38, 39, 40 |
| 10 | Photographs | 4, 18 |
| 11 | Pl.'s Answers to Interrogatories | 5, 18 |
| 12 | Email Correspondence (September 2018) | 6 |
| 13 | Email Correspondence (October 2, 2018) | 7 |
| 14 | Email Correspondence (November 2018) | 7, 24, 26, 38, 39 |
| 15 | Statement of Charges | 7, 23 |
| 16 | Nolle Prosequi Form (December 26, 2018) | 8 |
| 17 | Defs.' Expert Disclosure | 14 |

x

Defendants, Sergeant Marlon Koushall ("Sergeant Koushall") and Lieutenant Jason Yerg ("Lieutenant Yerg") (referred to collectively herein as the "Officer Defendants"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby move for summary judgment on Plaintiff's Second Amended Complaint, and in support states as follows:

## INTRODUCTION

This case involves the rare circumstance where an off-duty officer engages in misconduct and disorderly conduct while partying at a strip club at approximately 1:00 a.m. and now complains of how she was treated by the on-duty officer who had to respond and bring order to the problem created. The matter is ripe for judgment as a matter of law as the facts of what occurred are captured on video and not materially in dispute. Sergeant Koushall responded to Plaintiff's conduct with the use of force that was necessary, appropriate, and consistent with established law and policy at the time of the events. This is demonstrated by undisputed expert testimony. Lieutenant Yerg engaged in standard supervisory behavior and Plaintiff has yet, despite the lengthy discovery, to point to any evidence of misconduct by him. Plaintiff cannot demonstrate evidence that would show that either officer's conduct violated the law.  Plaintiff's allegations of a violation of her Constitutional rights and conspiracy, as well as her state law claims, are fanciful at best, appearing more as a post-hoc distraction to remove the focus from her own disorderly actions.  Plaintiff has been promoted twice since this incident and is now a Captain. She received less than two months of medical treatment for her alleged injuries and has produced no documentation to support any lost wages. In short, there is no basis for this case to proceed past summary judgment.

<u>**STATEMENT OF FACTS FOR SUMMARY JUDGMENT**</u>

**I.    THE AUGUST 26, 2018 INCIDENT**

On August 25, 2018, Plaintiff, an off-duty Baltimore City Police Department ("BPD or "Department") officer, and a group of women gathered in Baltimore for the bachelorette party of Wanda Johnson, another off-duty BPD officer. **Ex. 1, Henrietta Middleton Dep. 24:1–21**. The day started with the group attending brunch then traveling to two other bars – one a bar restaurant and the other a hotel bar – before ending the night at Norma Jean's Club ("Norma Jean's"), a strip club on 10 Custom Avenue in Baltimore. *Id.* at 24:1–8; 15:11–12. While at Norma Jean's, an altercation between the group of women and two other women, one later identified as Jada Stancil (Ms. Stancil), broke out. *Id.* at 32:5–10.

On this night, Sergeant Koushall was the on-duty patrol supervisor for the midnight shift in the Central District[1] for BPD. **Ex. 2, Marlon Koushall Dep. 24:8–22; 25:9–12**. While on patrol at Power Plant Live, around 1:20 a.m. on August 26, 2018, Sergeant Koushall heard Officer Pujols, a junior officer, frantically request additional units to the 400 Custom House (also known as "The Block")[2] via departmental radio. *Id.* at 25:16–17; 26:7–21. The Block "is known for disorderly conduct, street level crime, and public fighting, especially during night-time hours." **Ex. 3, Use of Force Report (April 6, 2020) at 8**. Upon arrival on the scene, Sergeant Koushall observed a crowd of people surrounding Officer Pujols who was attempting to restrain Ms. Stancil in a "very hostile environment." Ex. 2 at 28:10–21, 29:10–15. When Sergeant Koushall exited his vehicle to aid Officer Pujols, a female, later identified as Plaintiff, approached in an aggressive manner with her arms outstretched to strike Ms. Stancil. *Id.* at 29:21–22, 30:1–7; **Ex. 4, Photograph.** Sergeant

---

[1] The Central District is responsible for patrolling the subject area. Ex. 2 at 25:11–18.
[2] "The Block" encompasses the 400 blocks of East Baltimore Street and Custom House Avenue in Baltimore. *Id.* at 25:15–18, 26:7–15.

Koushall instructed Plaintiff to back up. Ex. 2 at 30:7–9. Sergeant Koushall then used his forearm in an effort to restrain Plaintiff's movements and prevent her from hitting Ms. Stancil. *Id.* at 30:10–12. In response, Plaintiff shoved Sergeant Koushall, causing him to lose his balance and step off the sidewalk where he was standing. Ex. 2 at 30:13–14; **Ex. 5, CCTV at 00:38-00:40**; **Ex. 6, Photograph**. Plaintiff then took an aggressive stance with her arms extended and fists balled, which Sergeant Koushall perceived to be a motion to strike him. Ex. 2 at 30:14–18; Ex. 5 at 00:38–00:42; **Ex. 7, Photograph**. In defense of himself and Ms. Stancil, Sergeant Koushall struck the Plaintiff one time on the left side of her face and took maneuvers to place her into custody. Ex. 2 at 30:18–21. Immediately after being struck, Plaintiff attempted to flee the scene. *Id.* at 30:21–22. Sergeant Koushall performed a leg sweep to take Plaintiff to the ground to place her in handcuffs. *Id.* at 31:1–9. While on the ground, Plaintiff refused to place her hands behind her back. *Id.* at 31:3–6. Plaintiff was able to regain her balance and stand up, at which time Sergeant Koushall, using a patrol car as leverage, successfully handcuffed her. *Id.* at 31:5–9.

Plaintiff first identified herself as law enforcement once she was placed into custody.[3] *Id.* at 38:7–10. Shortly thereafter, Sergeant Antwan Davis arrived on the scene and escorted Plaintiff to the Central District. *Id.* at 38:7–8. Immediately upon arriving at the Central District, at approximately 1:28 a.m., Sergeant Davis removed Plaintiff's right handcuff and secured the left handcuff on the bench in the District lobby. **Ex. 8, Sergeant Antwan Davis' Body Worn Camera at 5:14–6:14**. Sergeant Davis then asked Plaintiff if she wanted medical attention and Dominique Wiggins, another off-duty BPD officer who was present on the scene, stated a medic should be called. *Id.* at 6:14–6:34. Sergeant Davis promptly called for a medic at 1:29 a.m. *Id.* at 6:44–7:10.

---

[3] Prior to August 28, 2018, Sergeant Koushall and Plaintiff interacted indirectly during the investigation of an unrelated shooting; they had no other contact prior to this encounter. Ex. 2 at 62:19–22; 63:1–8.

3

When medics arrived less than ten minutes later, Plaintiff refused to be evaluated. *Id.* at 15:12–17:33. While at the District, Plaintiff received preferential treatment. For example, Plaintiff was given at least three glasses of water within her first twenty minutes at the District. *Id.* at 16:06–16:08. At 1:46 a.m., Plaintiff's friends arrived and were permitted to remain in the lobby with Plaintiff. *Id.* at 24:49–26:35. Plaintiff consumed alcohol the night she was arrested. Ex. 2 at 25:18–20; 38:14–17. The odor of alcohol radiated from Plaintiff's breath and her eyes were glassy and blood shot. Ex. 3 at 4.

Sergeant Koushall did not remain in the lobby where Plaintiff was being detained; he was called to investigate an unrelated shooting as he was the supervisor on duty. Ex. 2 at 46:4–21. Upon his return to the District, Plaintiff had been moved to the "roll call" room where she was unrestrained.[4] *Id.* at 48:18–20. Prior to being discharged, Plaintiff was issued two criminal citations for Disorderly Conduct and Failure to Obey by Sergeant Koushall. *Id.* at 50:7–14. As a result of Plaintiff's behavior on August 26, 2018, Plaintiff was suspended *with* pay, and an Internal Affairs investigation was opened. Ex. 1 at 49:12–19; **Ex. 9, Jason Yerg Dep. 12:1–14**. Photographs taken on August 26, 2018 revealed no visible injury to Plaintiff resulting from Sergeant Koushall's strike or use of force during Plaintiff's arrest. **Ex. 10, Photographs.** Plaintiff was briefly treated for her alleged minor injuries from August 26, 2018 until October 9, 2018.  Ex. 1 at 88:18–22, 104:19–

---

[4] When asked to testify as to the basis for the allegation in the Second Amended Complaint that "[a]fter seven (7) hours Plaintiff Middleton was still handcuffed to the wall at Central District Station," Plaintiff's response was to refer to her attorney.

> Q:    Paragraph 20 says, Middleton was handcuffed for seven hours. We've kind of already gone through the different places where you were and you indicated you couldn't remember if you were in handcuffs after you left the main lobby. What's your basis for those seven hours, if you have any.
>
> **A:      I'll refer to my attorney.**

Ex. 1 at 116:9–16.

4

22, 105:1–11. None of Plaintiff's physical injuries were permanent in nature. **Ex. 11, Pl.'s Answers to Interrogatories**.[5] Three to four weeks after the incident, Plaintiff traveled to Jamaica for the nuptials of Wanda Johnson – the individual whose bachelorette party Plaintiff was attending the night she was arrested. Ex. 1 at 29:8–16, 30:10–26.  Plaintiff is unable to quantify and has no documentation to support any alleged lost wages. *Id.* at 105:12–21.

## II.     BPD POLICIES IN EFFECT IN 2018

In 2018, Baltimore Police Department Policy 1115 governed officer use of force. Ex. 3 at 7. Under Policy 1115, BPD officers were trained and instructed to use force that was objectively reasonable, necessary, and proportional to the circumstance. *Id.* Objectively reasonable force was defined as follows:

> The reasonableness of a particular use of force is based on the totality of the circumstances known by the office at the time of the use of force.
>
> 1.1 Reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight.
>
> 1.2  The reasonableness standard is an objective one: whether the member's actions are objectively reasonable in light of the facts and circumstances confronting him or her, without regard to the member's underlying intent or motivation.
>
> 1.3 Reasonableness is not capable of precise definition or mechanical application. The reasonableness standard must allow for the fact that members are often forced to make split-second decisions – in circumstances that are tense, uncertain, dynamic and rapidly evolving – about the amount of force is necessary in a particular situation.

*Id.* Policy 1115 described use of force as necessary "when no reasonably effective alternative appears to exist, and only to the degree which is reasonable to effect [sic]a lawful purpose." *Id.* at 11. Lastly, the proportionality of a use of force was determined by…

---

[5] On the date of this filing, Officer Defendants received untimely supplemental discovery responses from Plaintiff approximately one and a half months after close of discovery. These supplemental responses are not considered in this Motion.

[T]he totality of the circumstances surrounding the situation, including the presence of imminent danger to officer or others. Proportional force does not require officers to use the same type or amount of force as the subject. The more immediate threat and the more likely that the threat will result in death or serious physical injury, the greater the level of force that may be objectively reasonable and necessary to counter it.

*Id.* at 12. "When a subject meets the threshold of active aggression, the following responses were authorized under Police 1115: Conducted Electrical Weapons, **Hand/Foot Strikes**, Less Lethal Impact Munitions, and Impact Weapons." *Id.* at 9 (emphasis added).

## III.   INTERNAL INVESTIGATION AND CRIMINAL CHARGING OF PLAINTIFF

Lieutenant Yerg, who was then working at Internal Affairs, was assigned by his superiors to handle Plaintiff's internal investigation. Ex. 9 at 12:1–14; 14:6–9. Prior to this assignment, Sergeant Koushall and Lieutenant Yerg did not know each other. Ex. 2 at 62:9–18. Contemporaneous with BPD's internal investigation, the State's Attorney's Office was also investigating Plaintiff's behavior the night of her arrest. Ex. 9 at 20:2–9. During the course of Lieutenant Yerg's investigation, he was notified by the records management system that there was a clerical issue with Plaintiff's criminal citations, inhibiting the citations from being filed with the court. *Id.* at 14:13–22, 15:1–6.  On or about September 2018, Sergeant Koushall reissued the citations (the "Second Citations") and sought instruction from the Department on how best to serve these documents on Plaintiff.  **Ex. 12, Email Correspondence (September 2018)**. In response, Plaintiff's supervisor, Sergeant Thomas Jackson, informed Sergeant Koushall that he was not required to make Plaintiff available to accept and execute the Second Citations. *Id.*; Ex. 1 at 118:11–20. Due to Plaintiff and her superior's unwillingness to make her available, Sergeant Koushall handwrote "Unable to Sign" on the Second Citations and submitted them to record management system. Ex. 2 at 61:11–19.

The Second Citations were also rejected because a physical signature from the individual charged is required for citations to be effective. *Id.* After receiving this notice, Sergeant Koushall reissued the citations for a third time (the "Third Citations"). *Id.* at 61:20–22, 62:1–2. Rather than make herself available to execute the Third Citations, Plaintiff informed the Department via email that the Third Citations could be delivered to her attorney who had permission to sign on her behalf. **Ex. 13, Email Correspondence (October 2, 2018).** Lieutenant Yerg, as the lead investigator, delivered the Third Citations to Plaintiff's attorney who executed the citations on Plaintiff's behalf. Ex. 9 at 16:6–18. The Third Citations were similarly rejected by the record management system as the individual charged is the only person permitted to sign charging documents. *Id.* at 16:18–22.

Given the complications with the issuance of the citations, on November 13, 2018, a representative of the State's Attorney's Office sent an email to a lieutenant at BPD with instructions on how to handle the situation:

> Per our conversation, ASA Patricia Deros advised that the attorney cannot sign charging documents, only the individual being charged can sign their charging documents. At this point, Deros' ***recommendation*** is for the department to seek out a criminal summons. None of the criminal citations written are acceptable.

**Ex. 14, Email Correspondence (November 2018)**. In accordance with these instructions, on November 30, 2018 at 10:21 a.m., Lieutenant Yerg forwarded the email to Sergeant Koushall and asked him to obtain a criminal summons for Plaintiff during his shift that evening. *Id.* On December 1, 2018, Sergeant Koushall filed an application of charges against Plaintiff with the Baltimore City Circuit Court Commissioner and a criminal summons was issued for Disorderly Conduct (Md. Code Ann., Crim. § 10-201(c)(2)), Failure to Obey (Md. Code Ann., Crim § 10-201(c)(3)), Assault in the Second Degree (Md. Code Ann., Crim. § 3-203), and Resisting Arrest (Md. Code Ann., Crim. § 9-408).  Ex. 2 at 62:4–2, 69:6–10; **Ex. 15, Statement of Charges.**

After Lieutenant Yerg forwarded the correspondence from the State's Attorney's Office to Sergeant Koushall, Lieutenant Yerg attended a meeting with a representative from the State's Attorney's Office. Ex. 9 at 32:9–22, 33:3–11. At that meeting, Lieutenant Yerg was informed that that the State's Attorney's Office was beginning to investigate Sergeant Koushall's behavior on August 26, 2018. *Id.* at 31:6–11. Around 12:00 p.m. or 1:00 p.m. the same day, Lieutenant Yerg promptly and appropriately opened an internal investigation against Sergeant Koushall. *Id.* at 31:11–16. An internal use of force analysis was conducted in connection with Sergeant Koushall's investigation. *See generally* Ex. 3. The use of force report proffered two conclusions: (1) "the actions of Sgt. Koushall in arresting Sgt. Middleton were objectively reasonable and consistent with accepted standards of police practices, policies, and training"; and (2) "opportunities to apply de-escalation techniques or alternatives approaches in lieu of force were not available to Sgt. Koushall during this incident and immediate action was required." *Id.* at 7–13.

On December 26, 2018 – approximately twenty-five (25) days after being charged via criminal summons – the charges against Plaintiff were entered *nolle prosequi*. **Ex. 16, Nolle Prosequi Form (December 26, 2018)**. Plaintiff was suspended with pay for a total of thirteen (13) months after the encounter with Sergeant Koushall. Ex. 1 at 49:12–19. On August 26, 2018, Plaintiff held the rank of Sergeant with the BPD. *Id.* at 16:10–11. Since then, Plaintiff has been promoted twice within the Department and now holds the position of Captain. *Id.* at 15:16–22, 16:1–7.

## IV.   PROCEDURAL BACKGROUND

On December 7, 2020, Plaintiff filed a complaint in this Court against Sergeant Koushall and Lieutenant Yerg in their individual and official capacities, BPD, Mayor and City Counsel of Baltimore, and Former Interim Police Commissioner for Baltimore City, Gary Tuggle. ECF No. 1. On May 10, 2021, Plaintiff filed her First Amended Complaint against the same parties. ECF

No. 28. On January 28, 2022, BPD, Mayor and City Council of Baltimore, and Gary Tuggle were dismissed from the suit. ECF No. 41. On February 14, 2022, Plaintiff filed a Second Amended Complaint against Sergeant Koushall and Lieutenant Yerg in their individual and official capacities, and Gary Tuggle. ECF No. 43. After a round of motions to dismiss, Gary Tuggle was dismissed with prejudice. ECF No. 50. The remaining claims against Defendants are as follows:

Sergeant Koushall: Count I – Battery; Count II – False Imprisonment; Count III – Malicious Prosecution and Abuse of Process; Count IV – Violations of Article 24 and 26 of the Maryland Declaration of Rights; Count VI – False Arrest; Count VII – 42 U.S.C. § 1983; Count IX – Civil Conspiracy; and Count X – 42 U.S.C. § 1985(3).

Lieutenant Yerg: Count III – Malicious Prosecution and Abuse of Process; Count VII – 42 U.S.C. § 1983; Count IX – Civil Conspiracy; and Count X – 42 U.S.C. § 1985(3).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party considering his burden of proof. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the "court must view the facts and the reasonable inferences drawn therefrom 'in the light most favorable to the party opposing the motion,'" *Mayo-Parks v. United States*, 384 F. Supp. 2d 818, 820 (D. Md. 2005) (quoting *Zenith Radio Corp.*, 475 U.S. at 587), "a 'party cannot create a genuine

9

dispute of material fact through mere speculation or compilation of inferences,'" *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 440 (D. Md. 2012).

Whether or not a state official was acting under the color of state law is a question of law that can be resolved on a motion for summary judgment. *See Nexus Servs., Inc. v. Vance*, No. 5:17-CV-00072, 2018 WL 542977, *2 (W.D. Va. Jan. 24, 2018) ("[T]he ultimate question of whether an actor was a state actor or functioning under color of law is a question of law for the court." (quoting *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 344 n.7 (4th Cir. 2000))); *see also White v. City of Greensboro*, 532 F. Supp. 3d 277, 309 (M.D.N.C. 2021), *on reconsideration in part,* No. 1:18-CV-00969, 2022 WL 510455 (M.D.N.C. Feb. 21, 2022) (citing *Goldstein*, 218 F.3d at 344 n.7).

## **ARGUMENT**

## I.   **SERGEANT KOUSHALL IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S EXCESSIVE FORCE CLAIM UNDER § 1983 CLAIM (COUNT VII)**

Qualified immunity amounts to "an entitlement not to stand trial or face the other burdens of litigation." *Brown v. Gilmore*, 278 F.3d. 362, 366–37 (4th Cir. 2002) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity will protect an officer "'from civil damages in a § 1983 action insofar as [the officer's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The Supreme Court has recognized that [qualified] immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"

10

*Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Further, "qualified immunity protects law officers from 'bad guesses in gray areas,' and it ensures that they may be held personally liable only for 'transgressing bright lines.'" *Id.* (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

"Qualified immunity bars § 1983 actions against government officials in their individual capacities unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Sammons v. McCarthy*, No. ELH-20-3010, 2022 WL 2065976, at *21 (D. Md. June 8, 2022) (quoting *Barrett v. PAE Government Services, Inc.*, 975 F.3d 416, 428 (4th Cir. 2020)). "Qualified immunity turns on the 'objective reasonableness of an official's conduct, as measured by reference to clearly established law.'" *Id.* at *22 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Accordingly, the doctrine protects officials who could reasonably believe that their actions were lawful under clearly established law. *Id.* "Thus, 'even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Id.* (quoting *Wilson v. Prince George's County*, 893 F.3d 213, 219 (4th Cir. 2018)). "The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred . . . [and] [t]he defendant bears the burden of proof on the second question—*i.e.*, entitlement to qualified immunity." *Id.* at *23 (quoting *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007)) (*Purnell I*). Courts have the discretion to consider the two inquiries for qualified immunity in whichever order they choose. *Id.* at *22. "The determination of whether qualified immunity exists is ultimately a question for the court." *Park v. Shiflett*, 250 F.3d 843, 853 (4th Cir. 2001).

11

Plaintiff's §1983 claim alleges violations under the Fourth and Fourteenth Amendment on three bases: (1) unreasonable and excessive use of force; (2) illegal search and seizure; and (3) illegal use of prosecution and detention. Plaintiff's claim for excessive force against Sergeant Koushall is based on her allegations that Sergeant Koushall "suddenly, without provocation and unexpectedly struck [Plaintiff] three times in her face/head/ear" then "continued to pursue her, threw her to the ground, and then grabbed her by her hair and clothing." SAC ¶ 11. As explained below, Sergeant Koushall was justified in his use of force because Plaintiff assaulted him then attempted to flee and resist arrest. Analyzing Plaintiff's claim, then, from the undisputed facts, no reasonable jury could find Sergeant Koushall violated Plaintiff's federal rights. Consequently, Sergeant Koushall is entitled to qualified immunity for excessive force because Plaintiff fails to demonstrate his conduct violated her constitutional rights and his actions did not violate clearly established law.

## A.      Sergeant Koushall's Conduct Did Not Violate Clearly Established Law

The Supreme Court has reiterated that "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (reversing because officers were entitled to summary judgment based on qualified immunity) (citations and some internal quotations omitted). "The 'salient question' is whether 'the state of the law' at the time of the events at issue game the officer 'fair warning' that his alleged treatment of plaintiff was unconstitutional." *Jones v. Buchanan,* 325 F.3d 520, 530 (4th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)).

Even assuming, *arguendo*, Sergeant Koushall's conduct did violate Plaintiffs' constitutional rights – which Plaintiff cannot show – Sergeant Koushall would still be entitled to

summary judgment based on qualified immunity because such rights were not clearly established at the time of the alleged violation. While Plaintiff certainly had a right to be free from the use of excessive and unreasonable force, as recognized in *Graham v. Connor*, *Graham* "does not by itself 'create clearly established law outside an obvious case.'" *E.W. by & through T.W. v. Dolgos*, 884 F.3d 173, 186 (4th Cir. 2018).

Sergeant Koushall was not given "fair warning" that his conduct was allegedly unconstitutional because his training and governing departmental policies indicated otherwise. Under Policy 1115, when a subject demonstrates active aggression, an officer is authorized to use the following force in response if they believe a subject is attempting to assault them or others: "Conducted Electrical Weapons, **Hand/Foot Strikes**, Less Lethal Impact Munitions, and Impact Weapons." Ex. 3 at 9 (emphasis added). Active aggression is defined as "[a] subject's attempt to attack or an actual attack on an officer or another person." *Id.* at 8.  Aggressive behaviors such as "lunging toward the officer, taking a fighting stance, striking the officer with hands, fists, kicks" constitute active aggression. *Id.*

Here, when Plaintiff approached Sergeant Koushall in an aggressive manner with her arms outstretched, "Sgt. Koushall was bound to intervene and take action due to the perceived threat to Ms. Stancil." *Id.* To protect the civilian and consistent with his training, Sergeant Koushall instructed Plaintiff to leave the area and attempted to restrict her movement by placing his arm out. Ex. 2 at 30:7–12. Instead of complying with the lawful request, Plaintiff responded by shoving Sergeant Koushall. *Id.* at 13–14; Ex. 5 at 00:38–00:40. "It was necessary to stop Sgt. Middleton's advance on Ms. Stancil, and when that aggression transferred to Sgt. Koushall by way of being pushed, Sgt. Koushall responded with a force option *within policy* to defend himself." Ex. 3 at 12 (emphasis added).  The force option being a *single* hand strike to the face.

13

At the point Plaintiff began to flee the scene, Sergeant Koushall had probable cause to believe she had committed an assault, disobeyed a lawful order, and was potentially intoxicated. **Ex. 17, Defs.' Expert Disclosure.**  Thus, Sergeant Koushall had an obligation to pursue to Plaintiff and take her into custody. *Id.* at 28. "Officers are trained to carry out an arrest in a quick manner when a crowd is present to both protect bystanders and to prevent the crowd from becoming more hostile, making the situation unsafe." Ex. 3 at 8. BPD officers, including Sergeant Koushall, are trained to take subjects to the ground when effectuating an arrest because when subjects are on the ground, their movements are restricted, making it safer for the officer. Ex. 17 at 28. As Plaintiff continued to tuck her hands in front of her, Ex. 3 at 4, inhibiting Sergeant Koushall from placing her in handcuffs, his further use of force to gain control of her was proportional to her resistance. In sum, "Sgt. Koushall's use of force was therefore, objectively reasonable and consistent with accepted standards of police practice, policies, and training." Ex. 3 at 11.

There is no genuine dispute of fact that Sergeant Koushall's conduct was within BPD policy. Defendants have retained a use of force expert who will provide testimony, *inter alia*, that "Koushall's actions in defending himself or others with a stun strike to Middleton's fact, his pursuit of her, his taking her to the ground, and his arrest of her were all [] objectively reasonable and consistent with nationally accepted standards of police policies practices and training." Ex. 17 at 30. Plaintiff has not designated any expert in this matter. Admissible evidence produced during discovery, including CCTV footage, the use of force analysis, and Officer Defendants' use of force expert, demonstrate that Sergeant Koushall's actions were justified in accordance with Policy 1115, and Plaintiff has failed to, and cannot, present evidence to the contrary. Sergeant Koushall could not have possessed the requisite notice that his conduct in striking and effectuating an arrest of an individual who assaulted an officer violated clearly established law because such conduct

was in the purview of his professional training and within departmental policy. No reasonable officer would be on notice that actions in accordance with their training while on-duty would be unlawful. Moreover, there does not appear to be "cases of controlling authority in [the] jurisdiction" or "a consensus of cases of persuasive authority," *see Wilson v. Layne*, 526 U.S. 603, 617–18 (1999), clearly identifying that Plaintiffs' rights were clearly established.   As the applicability of qualified immunity is a pure question of law, the determination is ripe, and for the reasons stated above, Sergeant Koushall is entitled to summary judgment on Plaintiff's excessive force claim under § 1983.

**B.      Even If Sergeant Koushall's Conduct Violated Clearly Established Law, Plaintiff Was Not "Seized" By Excessive Force in Violation of Her Fourth Amendment Rights**

The crux of the first prong in the qualified immunity query is whether a defendant "violated [p]laintiff's right to be free of 'seizures effectuated by excessive force.'" *Thomas v. Holly,* 533 F. App'x 208, 215 (4th Cir. 2013) (quoting *Schultz v. Braga,* 455 F.3d 470, 476 (4th Cir. 2006)). The inquiry is one of objective reasonableness of the force used based on a totality of the circumstances, *i.e.*, "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him"; subjective intent or motivation is irrelevant. *Id.* The Fourth Circuit has cautioned that "[t]he calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." *Park,* 250 F.3d at 853. At the summary judgment stage, once the court has viewed the evidence in the light most favorable to the nonmovant, "the question of whether the officer's actions were reasonable is a question of pure law." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*Purnell II*).

The relevant circumstances for evaluating the reasonableness of an officer's actions include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officer[] or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). "The extent of the plaintiff's injury is also a relevant consideration." *Buchanan,* 325 F.3d at 527. At the outset, Sergeant Koushall responded to a call for assistance on the Block – an infamous area in Baltimore known for having a high volume of crime and heavy pedestrian traffic. Ex. 2 at 26:13–21, Ex. 3 at 8. When Sergeant Koushall arrived, he witnessed a large crowd of people gathered and a junior officer was attempting to diffuse a hostile situation among a group of women. Ex. 2 at 27:7–12; 28:16–19. Once Sergeant Koushall exited his vehicle to assist the officer on the scene who was speaking to a civilian, Ms. Stancil, Plaintiff approached in a combative manner with her hands outstretched – potential signs of an imminent assault, particularly in light of the hostile environment. *Id.* at 30:1–7; Ex. 3 at 4; Ex. 4. To prevent Plaintiff from attacking Ms. Stancil, Sergeant Koushall instructed Plaintiff to back-up and extended his right forearm to restrict her movement. Ex. 2 at 30:7–12. Plaintiff did not cease her progression but instead shifted her aggression to Sergeant Koushall, who she subsequently shoved off the sidewalk into the street then took a combative posture with her fists balled. *Id.* at 30:13–18; Ex. 5 at 00:38–00:40. While the offenses Sergeant Koushall arrived on scene to assist with – breaches of the peace – were minor, Plaintiff's aggressive conduct and ultimate assault on an officer, prompts this factor to weigh in favor of Sergeant Koushall. *See Valladares v. Cordero*, 552 F.3d 384, 390 (4th Cir. 2009) (concurring with the district court's determination that while the severity of the offense was low, the first *Graham* factor weighed against plaintiff because her son "should never have shoved [the officer]"); *see also Jones v. Chapman*, No. ELH-14-2627, 2017 WL 2472220, at *28 (D. Md. June 7, 2017) (finding the first *Graham* factor weighed in favor of

16

police where plaintiff pushed an officer during the encounter even though the underlying traffic violation was a minor offense) (citing *Valladares*, 552 F.3d at 390)).

Given the location, time of night, atmosphere, and volume of individuals present, a reasonable officer would be on alert to the heightened risk of danger, as Sergeant Koushall was. During the encounter there were two instances where Plaintiff posed an immediate threat to the safety of others: (1) confronting Ms. Stancil after shoving Sergeant Koushall, and (2) taking an aggressive stance with her fists balled and hand pulled backwards. Regardless of whether Plaintiff actually intended to strike Ms. Stancil or Sergeant Koushall, Sergeant Koushall was trained that aggressive posturing such as Plaintiff's were signs of a potential imminent assault, and he was justified in using additional force. *See Brown*, 278 F.3d at 370 ("'If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.'") (quoting *Saucier v. Katz*, 533 U.S. 194, 195 (2001))). The occurrence of these threats to individual safety weighs in favor of Sergeant Koushall's use of force to defend himself and place Plaintiff in custody.

There is no genuine issue of material fact that Plaintiff was resisting arrest and attempting to evade arrest by flight. Once Sergeant Koushall struck Plaintiff in self-defense, he took measures to place Plaintiff under arrest, however, Plaintiff – by her own admission – attempted to flee the location.[6] Sergeant Koushall performed a leg sweep to prevent Plaintiff from fleeing and took her to the ground to place her custody.  Ex. 2 at 30:21–22, 31:1–9. While on the ground, Plaintiff refused to place her hands behind her back. *Id.* at 31:3–6. Plaintiff was able to regain her balance and stand, at which time Sergeant Koushall, using a patrol vehicle as leverage, successfully handcuffed her. *Id.* at 31:5–9. Sergeant Koushall's use of force was solely in self-defense and to

---

[6] "While Ms. Middleton attempted to retreat from Defendant Koushall's vicious attack, Koushall continued to pursue her…" SAC ¶ 11.

gain control of and restrain Plaintiff. No further force was used once Plaintiff was in custody. *Compare Chapman*, 2017 WL 2472220, at *30 (denying summary judgment where officers continued to strike plaintiff after he was unconscious), *and Valladares,* 552 F.3d at 390–91 (upholding denial of qualified immunity based on continued use of force once suspect was in the full control of police officers), *with Wilson v. Flynn,* 429 F. 3d 465, 469 (4th Cir. 2005) ("We also find it significant that Wilson admits that the allegedly excessive force ceased after the officers handcuffed him. As the district court noted, 'this fact supports the finding that the force used by the officers was that force which was necessary to effect the arrest of an aggressive individual in a rapidly changing environment."). Therefore, Sergeant Koushall's use of force to gain control of and restrain Plaintiff was reasonable in light of her attempts to resist arrest and flee the scene.

Finally, the level of force used by Sergeant Koushall did not cause severe injuries to Plaintiff. On the night of her arrest, Plaintiff refused evaluation by paramedics and the day following Plaintiff's arrest revealed no visible injuries such as cuts, swelling, or bruising that would be consistent with excessive force. Ex. 8 at 15:12–17:33; Ex. 10. The minor injuries Plaintiff allegedly sustained were temporary in nature for which she received de minimus treatment. Ex. 1 at 88:18–22, 104:19–22, 105:1–11; Ex. 11. Notably, a few weeks after Plaintiff's arrest, Plaintiff was in well enough physical and mental condition to travel approximately 1,500 miles to Jamaica for five days to attend a wedding. Ex. 2 at 29:8–16, 30:10–26. The minimal injuries sustained by Plaintiff are starkly different from the type of severe injuries present in successful use of force cases. *See, e.g., Buchanan,* 325 F.3d 520, 530–31 (concluding an officer's force was excessive where the officer caused a broken nose, "lacerations of the nose and lips, each requiring multiple sutures, and bruised ribs"); *Bailey v. Kennedy*, 349 F.3d 731, 744 (4th Cir. 2003) (same where plaintiff sustained shoulder injuries that required repeat surgeries to repair and cuts that required

stitches); *Thomas*, 533 Fed. App'x at 221 (holding an officer was objectively unreasonable in striking plaintiff in the face multiple times with his knee "with such force that he fractured Plaintiff's jaw and severely damaged the root of one of Plaintiff's teeth").

In the circumstances viewed in the light most favorable to Plaintiff, Sergeant Koushall's use of force was justified, and the force employed was reasonable. Therefore, Sergeant Koushall is entitled to qualified immunity on Count VII.

## II.     SERGEANT KOUSHALL IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S UNLAWFUL SEIZURE CLAIMS UNDER §1983 (COUNT VII) BECAUSE THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF

"The Fourth Amendment protects 'the right of the people to be secure in their persons … against unreasonable searches and seizures.'" *Hupp v. Cook*, 931 F.3d 307, 319 (4th Cir. 2019) (quoting U.S. Const. amend. IV). "A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause." *Id.* When analyzing whether probable cause existed in a particular situation, there are two applicable factors: "the suspect's conduct as known to the officer, and the contours of the offenses thought to be committed by that conduct." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir.1992)). Like excessive force claims, the test is one of objective reasonableness, *i.e.,* "whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest." *Hupp*, 931 F.3d at 318.

On August 26, 2018, Sergeant Koushall witnessed Plaintiff approach Ms. Stancil in an aggressive manner with her hands outstretched. Ex. 2 at 30:1–7; Ex. 4. Despite Sergeant Koushall's commands to back up, Plaintiff continued towards Ms. Stancil in an effort to hit her. Ex. 5 at 00:38–00:40. Under Maryland law, an assault is defined as "an attempt to cause a harmful or offensive contact with another or to cause an apprehension of such a contact." *Miles v. DaVita Rx,* LLC, 962 F. Supp. 2d 825, 834 (D. Md. 2013) (quoting *Wallace v. Poulos,* 861 F. Supp. 2d

587, 596 n.9 (D. Md. 2012)). Based on Plaintiff's combative movements and the hostility of the situation – as heard on the radio when Officer Pujols called for assistance – Sergeant Koushall had probable cause to arrest Plaintiff for assault on Ms. Stancil. [7]

Even assuming, *arguendo*, that the assault on a civilian was insufficient to establish probable cause, Plaintiff went on to commit an assault on Sergeant Koushall. Under Md. Code Ann., Crim. Law § 3-203, a person may not intentionally cause physical injury to a law enforcement officer engaged in the performance of the officer's official duties. Physical injury is defined as "any impairment of physical condition." Md. Code Ann., Crim. Law § 3-203(c)(1). When Plaintiff pushed Sergeant Koushall while he was visibly on duty, causing his body to rotate and him to stumble from the sidewalk into the street, she committed the crime of assault in the second degree. *See Moore,* 2020 WL 94467, at *5 (finding an officer had probable cause to arrest an individual who "swung his right arm toward Officer Alvarez and pushed his left arm against Officer Alvarez's upper torso, causing him to move back" for committing a second-degree assault). Therefore, a reasonable officer could believe that probable cause existed to arrest Plaintiff.[8]

"If a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers*, 249 F.3d at 290. For the reasons stated above, a reasonable officer could have believed that arresting Plaintiff given her assault of Ms. Stancil and Sergeant Koushall was lawful in light of clearly

---

[7] This Court may consider "whether probable cause to arrest existed for crimes other than those charges at the time of arrest," which in this case includes the second-degree assault of Ms. Stancil. *See Moore v. Peitzmeier*, No. TDC-18-2151, 2020 WL 94467, at *4 (D. Md. Jan. 4, 2020) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004)).

[8] The Court need not determine whether probable cause existed for all offenses charged; the presence of probable cause for one crime is sufficient to overcome a claim for unlawful seizure. *See Moore*, 2020 WL 94467, at *5.

established law and the information Sergeant Koushall possessed. Therefore, Sergeant Koushall is

entitled to qualified immunity for Plaintiff's §1983 based on unlawful seizure.

III.    **OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S ILLEGAL USE OF PROSECUTION UNDER § 1983 (COUNT VII)**

Plaintiff's theory for this basis – which is intertwined with the baseless conspiracy claims

– appears to be that Sergeant Koushall and Lieutenant Yerg conspired to bring criminal "false"

charges against her. Plaintiff has provided no evidence during discovery to support this position.

Plaintiff couches this claim as one for "illegal use of prosecution and detention," which despite the

unusual phrasing seems to be a claim for malicious prosecution under § 1983. Malicious

prosecution under § 1983 is "simply a claim founded on a Fourth Amendment seizure that

incorporates the elements of the analogous common law tort of malicious prosecution." *Lambert

v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). To prevail on a common law malicious prosecution

claim, the plaintiff must demonstrate that: "(1) a criminal proceeding instituted or continued by

the defendant[s] against the plaintiff; (2) without probable cause; (3) with malice, or with a motive

other than to bring the offender to justice; and (4) termination of the proceedings in favor of the

plaintiff." *Martin v. Conner*, 882 F. Supp. 2d 820, 842 (D. Md. 2012) (quoting *Heron v. Strader*,

361 Md. 258, 264 (2000)).

A.    **There is No Genuine Issue of Material Fact That Sergeant Koushall Had Probable Cause to Charge Plaintiff and He Did Not Act With Malice**

It is unclear from the Second Amended Complaint as to whether Plaintiff's malicious

prosecution claim is rooted in the original citations issued by Sergeant Koushall on August 26,

2018, or the criminal summons obtained on December 1, 2018, so Officer Defendants will address

them both. The original citations – along with the two sets of identical subsequent citations – were

issued for Failure to Obey and Disorderly Conduct. Under Md. Code Ann, Crim. § 10-201(c)(3),

"[a] person may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace." A violation of § 10-201(c)(3) requires a public disturbance, *i.e.,* an act that disturbs, incites, or tends to incite a large number of people gathered in the same area. *Higginbotham v. Brauer,* 2020 WL 4569520, at *5 (D. Md. Aug. 7, 2020) (citing *Spry v. State,* 396 Md. 682, 691–92 (2007)). The undisputed testimony shows that Sergeant Koushall instructed Plaintiff to back up when he witnessed her approaching a civilian in an aggressive manner with her arms outstretched – tell-tale signs of an impending assault. Ex. 2 at 30:2–12. Such an instruction was a reasonable and lawful order from a law enforcement officer to prevent further chaos in already hectic and volatile situation. Plaintiff's failure to comply with the lawful command, continuing to pursue the civilian in an effort to fight her, incited, or alternatively had the tendency to incite, the large crowd gathered in the street watching the altercation. Ex. 5 at 00:00–00:40. Therefore, Sergeant Koushall had probable cause to charge Plaintiff with a violation of § 10-201(c)(3).

Under Md. Code Ann., Crim. § 10-201(c)(2), "[a] person may not willfully act in a disorderly manner that disturbs the public peace." The disorderly conduct of Plaintiff and her accompanying group began long before Sergeant Koushall arrived on the scene. Inside Norma Jean's, the women attending the bachelorette party got into a verbal and physical altercation with two other women. Ex. 1 at 32:5–10. This altercation spilled onto the street of Custom House Avenue as the bars and strip clubs began to close for the evening. *Id.*; Ex. 5 at 00:00–00:40. When Sergeant Koushall arrived, a large crowd of people were on the street, watching the women continue to argue. Ex. 5 at 00:17–00:30. Plaintiff's disorderly conduct peaked when she approached Ms. Stancil in an effort to strike her and disobeyed a lawful command while Sergeant Koushall and Officer Pujols were trying to defuse the situation. Therefore, Sergeant Koushall had

probable cause to charge Plaintiff for her disorderly conduct, and the criminal proceeding instituted by citations did not lack probable cause.

On December 1, 2018, Sergeant Koushall obtained a criminal summons for Plaintiff for Failure to Obey, Disorderly Conduct, Resisting Arrest, and Assault in the Second Degree. Ex. 15. As stated above, Sergeant Koushall had probable cause to charge Plaintiff with Failure to Obey and Disorderly Conduct for her failure to comply with his order to back up and her assault on Ms. Stancil. Moreover, and as described in Section II, Sergeant Koushall had probable cause to charge Plaintiff with Assault because she shoved Sergeant Koushall off of the sidewalk into the street.

Lastly, Plaintiff was charged with resisting arrest under Md. Code Ann., Crim. § 9-408(b). The elements for resisting arrest are as follows: (1) an officer attempted to arrest Plaintiff; (2) Plaintiff knew the officer was attempting to arrest her; and (3) Plaintiff refused to submit to the arrest and resisted the arrest by force. *See United States v. Aparicio-Soria,* 740 F.3d 152, 155 (4th Cir. 2014) (quoting *Williams v. State,* 435 Md. 474, 495 (2013)). First, Sergeant Koushall testified that he attempted to place Plaintiff under arrest after his initial use of force in self-defense. Ex. 2 at 30:20–21. Second, as an officer herself, Plaintiff was well aware that it was illegal to strike an officer on duty. So, when Sergeant Koushall began taking measure to place her in custody – the same measures by which Plaintiff was trained – she knew he was attempting to arrest her. Even if Sergeant Koushall's efforts were not immediately apparent, when Sergeant Koushall began trying to place Plaintiff in handcuffs, she had knowledge that he was trying to take her into custody, yet she continued to refuse to make her hands accessible. Lastly, Plaintiff again refused to submit to arrest and actively resisted when she tried to flee the scene and when she was taken to the ground, she inhibited Sergeant Koushall from putting her in handcuffs. Ex. 2 at 30:20–22, 31:1–9. Therefore, Sergeant Koushall had probable cause to charge Plaintiff with a violation of § 9-108(b).

These facts are bolstered when, for the summons to have been issued, the Court Commissioner must have determined that there was probable cause for Plaintiff's arrest. Accordingly, there is no genuine issue as to any material fact and Sergeant Koushall is entitled to judgment as a matter of law for malicious prosecution because he had probable cause to pursue all charges brought against Plaintiff.

Further, there is no evidence in the record to support that Sergeant Koushall initiated charges against Plaintiff for any other reason than to bring her to justice. Prior to August 28, 2018, Sergeant Koushall and Plaintiff interacted indirectly on one occasion during the investigation of an unrelated shooting. Ex. 2 at 62:19–22, 63:1–8. As Plaintiff was a stranger to him, Sergeant Koushall had no other motivation in charging Plaintiff other than the fact that he was doing his job. The only reason Sergeant Koushall sought out criminal charges against Plaintiff was at the direction of the State's Attorney's Office because Plaintiff was unwilling to make herself available to accept not one, but two sets of criminal citations. Ex. 14. Plaintiff cannot now impose liability on Sergeant Koushall from the consequences of her own actions.

In the Second Amended Complaint, Plaintiff ventures to conjure malice and/or improper motivation by claiming Sergeant Koushall was "motivated by racial and gender animus based on Ms. Middleton being an African American female," and he "has a history of physical assaulting African American women." SAC ¶¶ 11–28. At the close of discovery, it is clear these allegations are unfounded. When asked to provide evidence of these discriminatory allegations, Plaintiff responded by stating: "I'll refer to my attorney on that." Ex. 1 at 115:14–20. As Plaintiff failed to identify any basis, supported by evidence and fact, that Sergeant Koushall instituted a criminal proceeding against her with malice or motivation other than justice, she cannot carry her burden in establishing a claim for malicious prosecution under § 1983. The fabricated characterization of

Sergeant Koushall and the events surrounding Plaintiff's arrest and subsequent charging may have been sufficient to survive a Fed. R. Civ. P. 12(b)(6) standard, but at this juncture, there is no evidence to substantiate such claims and the matter is ripe for judgment in favor of the Defendants. Accordingly, Plaintiff's claim for malicious prosecution fails as a matter of law.

> **B.     There is No Genuine Issue of Material Fact That Lieutenant Yerg Did Not Continue or Institute a Criminal Proceeding Against Plaintiff**

Lieutenant Yerg incorporates by reference, as if fully restated herein, the arguments and factual allegations asserted in Section II(a). In addition to Plaintiff's failure to establish that the criminal proceedings lacked probable cause or were instituted with malice, Plaintiff has not and cannot demonstrate that Lieutenant Yerg instituted or continued these proceedings against her. While it is recognized that an individual who instigates, aides, or assists in a criminal prosecution can be liable for malicious prosecution; that is not the case here. *See Middleton v. Baltimore City Police Dep't*, No. CV ELH-20-3536, 2022 WL 268765, at *19 (D. Md. Jan. 28, 2022). This theory requires a showing that the defendant took affirmative actions that subjected Plaintiff to a wrongful prosecution. *Id.* On the other hand, "a person is not liable for malicious prosecution for relying upon the independent judgment of a prosecutor or attorney . . . ." *Id.* (quoting *Smithfield Packing Co., Inc. v. Evely*, 169 Md. App. 578, 593–94 (2006)).

The only bases in the Second Amended Complaint Plaintiff could rely on to support the position that Lieutenant Yerg instigated, aided, or assisted in the criminal prosecution of Plaintiff has been refuted during discovery. In the Second Amended Complaint, Plaintiff contends the statement of charges filed against Plaintiff "were sworn out by Defendant Koushall with the advice and guidance of Defendant Yerg." SAC ¶ 30. In actuality, Lieutenant Yerg was merely a conduit in the charging process, relaying a recommendation by the State's Attorney's Office to Sergeant Koushall. On November 13, 2018, the State's Attorney's Office in an email to BPD stated "[a]t

this point, Deros' recommendation is for the department to seek out a criminal summons. None of the criminal citations as written are acceptable." Ex. 14. In compliance with this direction, Lieutenant Yerg forwarded the email to Sergeant Koushall and instructed him to obtain a criminal summons. *Id.* Lieutenant Yerg had no role or discussion regarding the type of charges Sergeant Koushall was to file, he simply relayed the State's Attorney's independent judgment to charge Plaintiff via summons due to complications with the citations to Sergeant Koushall. Ex. 9 at 17:10–11 ("At no point in time did I ever direct him what charges to file."). Contrary to the allegations in the Second Amended Complaint, the events surrounding the issuance of a criminal summons were not a part of an elaborate scheme by two-strangers to harm the Plaintiff. Accordingly, Lieutenant Yerg is entitled to judgment as a matter of law on Plaintiff's claim for malicious prosecution under § 1983.

## IV. OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS (COUNT IV)

Articles 24 and 26 of the Maryland Declaration of Rights codify Maryland's constitutional guarantee of the rights conferred under the Fourteenth and Fourth Amendments to the United States Constitution, respectively, and are construed *in pari materia* with their federal counterparts. *See, e.g.*, Middleton, 2022 WL 268765, at *27. Accordingly, for the same reasons Plaintiff has failed to show a violation of her federal constitutional rights to freedom from excessive force, unlawful seizure, and malicious prosecution, Officer Defendants are entitled to summary judgment on Plaintiff's identical claims under the Maryland Declaration of Rights.

## V. SERGEANT KOUSHALL IS ENTITLED TO SUMMARY JUDGMENT ON STATE LAW TORT CLAIMS (COUNTS I, II, AND VI) BECAUSE THERE WAS A LEGAL JUSTIFICATION FOR HIS USE OF FORCE AND TO PLACE PLAINTIFF UNDER ARREST

Plaintiff asserts three state law tort claims against Sergeant Koushall in his individual capacity: Battery (Count I), False Imprisonment (Count II), and False Arrest (Count V), related to

Sergeant Koushall's arrest of Plaintiff on August 26, 2018. Sergeant Koushall will address each of these causes of action in turn.

### A.    Sergeant Koushall Is Entitled To Judgment As A Matter Of Law For Battery Because His Use of Force Was Justified (Count I)

Under Maryland law, a common law battery consists of "an offensive, non-consensual touching–the *unlawful* application of force to another person." *Jones v. Fam. Health Centers of Baltimore, Inc.*, 135 F. Supp. 3d 372, 384 (D. Md. 2015) (quoting *Robinson v. Prince George's Cnty., Md.*, No. CIV. PJM 09-181, 2011 WL 1743263, at *6 (D. Md. May 6, 2011), *aff'd*, 465 F. App'x 238 (4th Cir. 2012) (emphasis added)). In the context of an arrest, it should be noted that police officers "have the right to take reasonably necessary measure to make the arrest in a manner that protects both the public and themselves," and "[i]n doing so, they may use some degree of force." *Tavakoli-Nouri v. State*, 139 Md. App. 716, 779 A.2d 992 (2001). These principles are reflected by the law enforcement justification defense which provides that a police officer is not civilly liable for an assault or battery that may result from use of use of force that is reasonably necessary to discharge their official duties. *Boyle v. Azzari*, No. GJH-22-0884, 2023 WL 144577, at *4 (D. Md. Jan. 10, 2023). In other words, "[a] police officer will only be liable for an assault or battery if their actions are not justified." *Id.* (internal citations omitted).  The reasonableness of a use of force must be carefully analyzed in light of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Okwa v. Harper*, 360 Md. 161, 200 (2000) (quoting *Graham*, 490 U.S. at 396).

"The parallel state law claim of assault and battery is subsumed within the federal excessive force claim...." *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). Therefore, for the reasons stated in Section I(a), Sergeant Koushall is entitled to judgment as a matter of law on Plaintiff's

battery claim because his use of force was justified. As Sergeant Koushall was acting within the bounds of the use of force policy by using objectively reasonable force to execute his official duties in response to an active aggressor who then attempted to flee and resist arrest, he is not liable for battery and is entitled to judgment on Count I. *See, e.g., Carter v. Khan*, No. 1:15-CV-00572 JCC, 2015 WL 6738607, at *13 (E.D. Va. Nov. 4, 2015), *aff'd,* 693 F. App'x 268 (4th Cir. 2017) (granting summary judgment on a battery claim in favor of an officer who deployed a taser during an arrest, in compliance with the departmental use of force policy).

> **B.     Sergeant Koushall Is Entitled to Judgment As A Matter Of Law For False Imprisonment and False Arrest Because He Had Probable Cause To Arrest Plaintiff (Counts II and VI)**

While Plaintiff's state law claims for false arrest and imprisonment are not analyzed under an identical framework as her unlawful seizure claim, for similar reasons, no reasonable jury could find in Plaintiff's favor on these common law issues. False imprisonment is the unlawful detention of another person against their will. *Garcia-Perlera v. State*, 197 Md. App. 534, 558 (2011). False arrest occurs when a warrantless arrest lacked probable cause. *Smith v. Munday*, 848 F.3d 248, 257 (4th Cir. 2017). "The elements of false arrest and false imprisonment are identical under Maryland law." *Pegues v. Wal-Mart Stores, Inc.*, 63 F. Supp. 3d 539, 542 (D. Md. 2014). To sustain a claim for either cause of action, Plaintiff must demonstrate that she was deprived of her liberty without her consent and without legal justification. *Id.*  Similar to battery, "a police officer carrying out an arrest with legal authority or justification under the circumstances is not liable for false imprisonment in connection with that arrest." *Dobbs v. Townsend*, 416 F. Supp. 3d 441, 452 (D. Md. 2019) (citing *Montgomery Ward v. Wilson,* 339 Md. 701 (1995)). "Where the basis of a false imprisonment action is an arrest by a police officer, the liability . . . will ordinarily depend upon whether or not the officer acted within his legal authority to arrest," such as whether the officer had probable cause to conduct the arrest.  *Heron*, 361 Md. at 264–65; *Morgan v. Prince George's*

28

*Cnty., Md.*, No. CIV.A AW-09-1584, 2010 WL 2891700, at *6 (D. Md. July 20, 2010). "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *United States v. Dickerson*, 27 F. App'x 236, 242 (4th Cir. 2001) (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)).

On August 26, 2018, Sergeant Koushall responded to a distressed call from a fellow officer, late at night, in a prominently dangerous area in Baltimore. Ex. 2 at 25:16–17, 26:7–21. When he arrived, Sergeant Koushall saw a large mass of individuals on the street and an officer who attempting to alleviate the visible tension between a group of women. *Id.* at 28:10–21, 29:10–15. Sergeant Koushall exited his patrol car to assist Officer Pujols who was restraining a woman, Ms. Stancil. *Id.* at 29:21–22, 30:1–2. Shortly after Sergeant Koushall exited his vehicle, Plaintiff quickly approached, towards Ms. Stancil, with hostility and her arms outstretched. *Id.* at 30:2–7; Ex. 3 at 4. Sergeant Koushall instructed Plaintiff to back up and used his forearm to prevent Plaintiff from getting closer to Ms. Stancil. Ex. 2 at 30:7–12. Plaintiff ignored the command and continued to pursue Ms. Stancil. *Id.* Due to Plaintiff's posturing, failure to obey commands, and the environment on Custom House Avenue – information possessed by Sergeant Koushall – a reasonably prudent officer would have reason to believe Plaintiff had committed an assault on Ms. Stancil and a battery was imminent. Therefore, Sergeant Koushall had probable cause to arrest Plaintiff.

Notwithstanding the offense against Ms. Stancil, Plaintiff went on to commit a second-degree assault against Sergeant Koushall when she shoved him off the curb when he intervened on her confrontation with Ms. Stancil. *See Moore,* 2020 WL 94467, at *5. As Sergeant Koushall

had probable cause to arrest Plaintiff for assault on a civilian and an officer, he was legally justified in his deprivation of Plaintiff's liberty. Given this analysis, Sergeant Koushall is entitled to judgment as a matter of law as to Plaintiff's claims for false imprisonment (Count II), and false arrest (Count VI).

## VI.   OFFICER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION AND ABUSE OF PROCESS CLAIM (COUNT III)

Malicious prosecution and abuse of process are different and independent actions. *Walker v. Am. Sec. & Tr. Co. of Washington, D. C.,* 237 Md. 80, 87 (1964). Abuse of process is concerned with "the improper use of criminal or civil process in a manner not contemplated by law after it has been issued," while malicious prosecution is concerned with "maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause." *Id.* As these claims are separate and distinct, Plaintiff should have stated each cause of action in a separate count to promote clarity. *See Jha v. XCube Rsch. & Dev., Inc.,* No. 8:18-CV-00364-PX, 2018 WL 4538552, at *3 (D. Md. Sept. 20, 2018). As Plaintiff has failed to do so, Officer Defendants are left to decipher the factual allegations in the Second Amended Complaint and opine as to which allegations concern each cause of action. Officer Defendants tackle each cause of action in turn.

### A.   Officer Defendants Are Entitled To Judgment As A Matter of Law on Plaintiff's Common Law Malicious Prosecution Claim

The analysis for common law malicious prosecution is analogous to the analysis to a claim for malicious prosecution under § 1983. *See Lambert*, 223 F.3d at 262; *see also Talley v. Anne Arundel Cnty., Maryland,* No. CV RDB-21-347, 2021 WL 4244759, at * 12 (D. Md. Sept. 17, 2021) (holding the preceding analysis of malicious prosecution controls the claim for common law malicious prosecution). For the reasons stated in Section I(c), Sergeant Koushall and Lieutenant

Yerg are entitled to judgment as a matter of law on Plaintiff's common law malicious prosecution claim.

**B.      To The Extent Plaintiff Brings An Abuse Of Process Claim, Officer Defendants Are Entitled To Judgment As A Matter Of Law**

Plaintiff conflates two distinct causes of action – malicious prosecution and abuse of process – in the Second Amended Complaint. The language in Count III refers only to the elements of malicious prosecution, *e.g.*, "Defendant Officer instituted the criminal prosecution against Plaintiff," "did so without probable cause," and "out of malice." SAC ¶¶ 46–48.  Count III fails to include any language as to the elements of abuse of process; the claim appears to be appended inadvertently. However, to the extent Plaintiff intended to bring a cause of action for abuse of process, the claim fails as a matter of law.

Abuse of process occurs "when a party has willfully misused criminal or civil process *after it has issued* in order to obtain a result not contemplated by law." *Carter v. Aramark Sports & Ent. Servs., Inc.*, 153 Md. App. 210, 244 (2003) (emphasis added) (internal quotations omitted). To sustain an action for abuse of process, the claimant must prove (1) the willful use of process for an illegal purpose; (2) an ulterior motive underlying the use of process; and (3) damages resulting from the perverted use of process. *Humphrey v. Herridge*, 103 Md. App. 238, 243 (1995). As the multiple rounds of criminal citations were deficient, the criminal process was not issued against Plaintiff until Sergeant Koushall obtained a criminal summons on December 1, 2018. The Second Amended Complaint is devoid of any allegation, and there is no evidence, regarding Sergeant Koushall or Lieutenant Yerg use of criminal or civil process that took place *after* issuance of the criminal summons. Therefore, Plaintiff cannot sustain a claim for abuse of process. *See Bradley v. Baltimore City Police Dep't*, 2023 WL 6381442, at *6 (D. Md. Sept. 28, 2023) (dismissing claim

for abuse of process as plaintiff failed to allege any specific actions by any defendant misusing the criminal process after it was issued).

Even if this Court considers the original citations as issuance of process, the claim still fails as a matter of law because process was not used for an illegal purpose nor with an ulterior motive. "The defendant must have taken some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process, to state an abuse of process claim – bad motive alone is not enough." *Martin*, 882 F. Supp. 2d at 848 (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 38 (1997)). The type of improper purpose contemplated by law "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money." *Metro Media Ent., LLC v. Steinruck,* 912 F. Supp. 2d 344, 351 (D. Md. 2012) (quoting *Wood v. Palmer Ford, Inc.*, 47 Md. App. 692, 706–07 (1981)). As previously stated, Plaintiff fails to provide any logical bases for the alleged improper motives Officer Defendants – two strangers – had underlying the use of process. And even if Officer Defendants had ulterior motives (which they did not), the Officer Defendants did not act contrary to the purpose for which process was issued – to quell an act of violence against Sergeant Koushall and penalize Plaintiff for her behavior that was contrary to law. *See Barnes v. Montgomery Cnty., Md.*, 798 F. Supp. 2d 688, 693–94 (D. Md. 2011). For the foregoing reasons, Sergeant Koushall and Lieutenant Yerg are entitled to judgment as a matter of law on Count III.

## VII.    OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CONSPIRACY CLAIMS (COUNT IX- X)

Plaintiff brings two conspiracy claims against Officer Defendants, one rooted in common law (Count IX), the other under 42 U.S.C. § 1985(3) (Count X). The theories for each claim are identical: Sergeant Koushall and Lieutenant Yerg conspired to falsely charge Plaintiff in an effort

32

to insulate Sergeant Koushall from criminal and departmental liability. The conspiracy claims are barred under the intracorporate conspiracy doctrine and fail as a matter of law because Plaintiff has offered no evidence to create a genuine issue of fact for trial that Officer Defendants acted in concert to achieve a discriminatory or illegal action.

### A.   There Is No Genuine Issue of Material Fact That Officer Defendants Were Motivated By Personal Gain Or That Their Actions Were Unauthorized

In a partial motion to dismiss Plaintiff's First Amended Complaint, Officer Defendants argued Plaintiff's conspiracy claims were barred by the intracorporate conspiracy doctrine because Sergeant Koushall and Lieutenant Yerg were BPD officers at all relevant times in the complaint. *See* ECF No. 31. The intracorporate conspiracy doctrine, which applies to civil rights cases, "is rooted in the basic tenet that 'you must have two persons or entities to have a conspiracy.'" *Burgess v. Baltimore Police Dep't*, No. CV RDB-15-0834, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2016) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925 (1952)). Accordingly, "employees, when acting within the scope of their employment, cannot conspire amongst themselves." *Walters v. McMahen*, 795 F. Supp. 2d 350, 358 (D. Md. 2011), *aff'd,* 684 F.3d 435 (4th Cir. 2012) (citation omitted). There are two recognized exceptions to the intra-corporate conspiracy doctrine – (1) where the employee's actions are unauthorized by the employer and (2) where the employee's actions are motivated by person gain. *Id.* This Court denied the Officer Defendants' motion holding that Plaintiff sufficiently plead facts that fit both exceptions to the intracorporate conspiracy doctrine. ECF No. 41 at 68. Officer Defendants reassert the contention that Plaintiff's conspiracy-based claims are barred by the intracorporate conspiracy doctrine. Based on lack of evidence produced in discovery, there is no genuine issue of fact that Sergeant Koushall or Lieutenant Yerg was motivated by personal gain or that their actions were unauthorized by BPD.

For the personal stakes exception to apply, "a conspirator must possess a personal interest independent and 'wholly separable' from the interests of the corporation." *Walters,* 795 F. Supp. 2d at 359 (quoting *Selman v. Am. Sports Underwriters, Inc.,* 697 F. Supp. 225, 239 (W.D.Va.1988)). Plaintiff's allegation that the Officer Defendants conspired to protect Sergeant Koushall from criminal liability and interdepartmental discipline is devoid of evidentiary support. *See* SAC ¶ 28. *Hicks v. Ferreyra* is instructive here. 396 F. Supp. 3d 564 (D. Md. 2019). In *Hicks*, plaintiff claiming to be a Secret Service agent was detained by an officer while he verified the plaintiff's credentials. *Id.* at 570. A second officer arrived during the stop to provide assistance to the first officer. *Id.* Shortly after the plaintiff was informed that he was free to leave, the second officer pulled the plaintiff over again for driving erratically and use of a cellular device while driving. *Id.* at 572. Plaintiff filed suit against the two officers alleging that they detained him twice without probable cause or reasonable, articulable suspicion as a part of a conspiracy to prevent him from discharging his duties in violation of 42 U.S.C. § 1985(1). *Id.* at 570. The defendant officers moved for summary judgment on the conspiracy claim alleging the cause of action was barred by the intracorporate conspiracy doctrine. *Id.* at 571. In opposition, plaintiff argued the defendants had independent, personal interests in detaining him because (1) officers have a stake in convincing superiors that their actions were appropriate when faced with internal investigations and (2) officers have a personal incentive to protect their peers and avoiding further scrutiny of police. *Id.* at 581. This Court rejected the argument holding that even if the first officer had a personal interest in justifying his use of force, there was no evidence to support that the second officer – who had known the first officer for ten years – had any personal stake in the outcome or that the officer received an independent benefit. *Id.* at 580–81. Accordingly, the personal stakes exception was inapplicable. *Id.* at 581.

34

Like in *Hicks*, there is no evidence that Lieutenant Yerg had any personal stake in the outcome of either Sergeant Koushall or Plaintiff's criminal or internal investigations. Sergeant Koushall and Lieutenant Yerg did not know each other prior to August 26, 2018. Ex. 2 at 62:16–18; Ex. 9 at 37:10–15 ("I had never met or had any interaction with Sergeant Koushall, prior to this incident.). Lieutenant Yerg had a professional and friendly relationship with Plaintiff. Ex. 9 at 37:11–18. Lieutenant Yerg was not present the night of Plaintiff's arrest, he was tasked with handling the investigation after the fact in a routine assignment by his superiors. *Id.* at 12:6–14. There was nothing for Lieutenant Yerg to gain by filing allegedly false charges against Plaintiff or insulating Sergeant Koushall from criminal or professional liability. Lieutenant Yerg's involvement in the instant matter is an that of an independent-third party who was assigned to investigate the occurrence; he did not insert himself in this investigation. The investigation was assigned to Lieutenant Yerg on a routine basis; he was purely indifferent as to the outcome and he was simply doing his job, nothing more, nothing less. When asked about his personal feelings, Lieutenant Yerg responded as follows:

> Q:    Did you have any – let me use the right word – feelings yourself about whether or not Sergeant Middleton should be charged?
>
> **A:    My feelings didn't have anything to do with it, and I had no feelings either way.**

Ex. 9 at 18:18–22. Without any evidence of an independent benefit for Lieutenant Yerg to protect a stranger, the personal stakes exception cannot apply.

With regard to the second exception, Plaintiff conceded that at all relevant times, Sergeant Koushall and Lieutenant Yerg were duly authorized agents of the Baltimore City Police Department who were acting within the scope of their employment for the benefit of the City of Baltimore. SAC ¶¶ 4–5. Accordingly, Plaintiff "cannot avoid the intracorporate conspiracy

doctrine by now asserting that their acts were unauthorized." *Hicks*, 396 F. Supp. 3d at 583; *see Bumgardner v. Taylor*, No. RDB-18-1438, 2019 WL 1411059, at *6 (D. Md. March 28, 2019) ("[R]egarding the second exception, [Plaintiff] claims that the Defendant officer were acting within the scope of employment. Therefore, neither exception will bar this Court's application of the intracorporate conspiracy doctrine….").

Assuming, *arguendo*, that Plaintiff's concession is insufficient to demonstrate the inapplicability of the exception to the intracorporate conspiracy doctrine, there is no genuine issue to any fact that the Officer Defendants' actions were unauthorized or outside the scope of their employment.  Although such alleged misconduct of falsifying charges may not be expressly authorized, the "conduct may nonetheless be considered authorized where it was incidental to the performance of duties that the employer entrusted to the employees." *Baltimore City Police Department v. Potts*, 468 Md. 265, 312 (2020); *see also Talley*, 2021 WL 4244759, at *10 ("An employee's misconduct will be considered 'authorized' by the employer if it is 'incidental to the performance of the duties entrusted to the employee.'" (internal citations omitted)).

In *Potts*, the court found that while officers who participated in the fabrication of evidence and provided false testimony deviated from the normal method of carrying out their duties, the officers' actions were intertwined with the authorized conduct of making arrests such that they were within the scope of their employment. 468 Md. at 318. Officer Defendants were hired and authorized by BPD to effectuate arrests and charge individuals upon a violation of law. Accordingly, even if Sergeant Koushall and Lieutenant Yerg were not expressly authorized to bring "false charges" against Plaintiff, the alleged misconduct was incidental to their authorized conduct as police officers, and thus was "authorized" by BPD in this context. Therefore, neither

exception to the intracorporate conspiracy doctrine applies and, consequently, Plaintiff's common law and statutory conspiracy claims cannot prevail.

**B.      The Conspiracy Claims Fail Because Plaintiff Has Offered No Evidence to Create a Genuine Issue of Fact For Trial That Officer Defendants Acted in Concert.**

Plaintiff's claim also fails because the record is absent of any evidence to create a genuine issue of fact that the Officer Defendants partook in a conspiracy. A claim of civil conspiracy under Maryland law requires proof of the following: "(1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of lawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damages resulting to the plaintiff." *Giannasca v. Bank of Am., N.A.*, No. CV ELH-17-2110, 2018 WL 6046814, at *17 (D. Md. Nov. 19, 2018) (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007)). "To survive a motion for summary judgment, plaintiff's evidence must 'at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try and accomplish a common and unlawful plan.'" *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). No such evidence of concerted action is available here.

As previously stated, Lieutenant Yerg and Sergeant Koushall were complete strangers prior to Plaintiff's arrest. Ex. 2 at 62:16–18; Ex. 9 at 37:10–15. The extent of Sergeant Koushall and Lieutenant Yerg's limited and professional interactions during the investigation related only to the issuance of citations due to clerical errors and Plaintiff's unwillingness to sign the citations. *See* Ex. 9 at 30:6–17 (Lieutenant Yerg testifying that he spoke to Sergeant Koushall "less than five

times" by phone and "only in reference to citation filings.").[9]  Lieutenant Yerg's interactions with Sergeant Koushall were "just to ensure that … if the situation warranted charges on the night in question, that they were in – in fact brought to some kind of fruition in a criminal court." *Id.* at 17:18–22; 18:1–4.

The lynch pin of Plaintiff's conspiracy claims is the allegation that Lieutenant Yerg was "on notice by the State's Attorney's Office that they were so no longer going to pursue Middleton's charges and instead pursue Sergeant Koushall for multiple charges" so, Lieutenant Yerg advised and guided Sergeant Koushall to obtain additional charges against Plaintiff. SAC ¶¶ 28, 30. The facts gleaned during discovery do not support this contention. As described above, issues arose with the original citations issued against Plaintiff on August 26, 2018. Ex. 2 at 59:6–21. To remedy the administrative deficiencies, Sergeant Koushall subsequently drafted two set of identical citations that were also rejected for various reasons. *Id.* at 61:11–22; 62:1–8. As none of the citations to date were acceptable, Assistant State's Attorney Patricia Deros' *recommendation* was for the Department to seek out a criminal summons against Plaintiff. Ex. 14. Lieutenant Yerg did not make the decision to charge Plaintiff [10] and he did not advise or guide Sergeant Koushall as to what type of charges he should seek.[11] Lieutenant Yerg simply forwarded the email to Sergeant Koushall and at the direction of the State's Attorney's Office and instructed Sergeant Koushall to

---

[9] There is no evidence to support Plaintiff's contention that Lieutenant Yerg and Sergeant Koushall "remained in constant communication via telephone and email." SAC ¶ 28.

[10]   Q:   Now, actually, what the Assistant State's Attorney Patricia Deros had indicated was the procedure, but not a recommendation, that the charges be brought; isn't that correct?

   **A:   Well, it says right here sir, At this point, Deros' recommendation is for the Department to seek out a criminal summons. So that's not my recommendation, sire; that's the State's Attorney's.**

Ex. 9 at 25:2–10.

[11] "At no point in time did I ever direct him what charges to file." Ex. 9 at 17:10–11.

obtain a criminal summons. Ex. 14. Moreover, relaying the State's Attorney's guidance occurred *before* Lieutenant Yerg was informed that Sergeant Koushall's actions were going to be investigated. Lieutenant Yerg testified:

> Q:    So that – based on that, at the time that you recommended to Sergeant Koushall about obtaining a criminal summons against Sergeant Middleton, you had already learned that the State's attention that been directed from one to the other?
>
> **A:    Actually, the timeline for the morning is, this citation was – this e-mail was forwarded at 10:21, and I believe, if you look at the entry into when Koushall was entered as a possible accused at my behest, was somewhere between noon and 1:00, and that was subsequent to a meeting I had after I forwarded this e-mail. *I was not aware that the focus had shifted when I sent this e-mail.***

Ex. 9 at 32:17–22, 33:3–11 (emphasis added). As the evidence directly refutes Plaintiff's propositions, there is no evidence in the record that could reasonably lead to the inference that Sergeant Koushall and Lieutenant Yerg "positively or tacitly came to a mutual understanding to try and accomplish a common and unlawful plan." *Veney*, 321 F. Supp. 2d at 748. Thus, Officer Defendants are entitled to judgment for civil conspiracy as a matter of law.

   **C.    No Genuine Issue of Any Material Fact That Sergeant Koushall and Lieutenant Yerg Had Discriminatory Motivation**

   "To establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Victors v. Kronmiller*, 553 F. Supp. 2d 533, 550 (D. Md. 2008) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.1995)). "[T]he law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by

defendants to violate the claimant's constitutional rights."[12] *Simmons*, 47 F.3d at 1377 (internal citations omitted). For the reasons stated in Section V(b), Plaintiff has failed to demonstrate the first element of a §1985(3) claim: a conspiracy. *See id.* at 1377–78 (concluding there was no "meeting of the minds" sufficient to support a § 1985(3) claim where one defendant who was an advisor in the investigation "played no role in applying or executing the subject search warrant"). Furthermore, Plaintiff's bald allegations of discriminatory animus in the Second Amended Complaint do not and cannot hold water at this stage and there is not a scintilla of evidence in the record that either Sergeant Koushall or Lieutenant Yerg acted out of any racial animus when pursuing charges against Plaintiff. Notably, when asked to provide evidence regarding Sergeant Koushall's alleged discriminatory history, Plaintiff had no substantive response:

> Q:     Okay. Do you have any evidence to support your allegation in the second amended complaint in paragraph 11 that Koushall had a history of physically assaulting other African- American women?
>
> **A:     I'll refer to my attorney on that.**

Ex. 1 at 115:14–19. Lastly, as stated in Sections I–III, Plaintiff cannot and has not shown that Sergeant Koushall or Lieutenant Yerg's actions violated her constitutional rights. Therefore, the Officer Defendants are entitled to judgment on Count X.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants, Sergeant Marlon Koushall and Lieutenant Jason Yerg, respectfully request that this Court grant their Motion for Summary Judgment on Plaintiff's Second Amended Complaint and enter judgment in their favor on Counts I–IV and VI–X.

---

[12] Oddly, Plaintiff contends the alleged conspiracy "resulted in Ms. Middleton's deprivation of freedom during the time she was arrested and held at the police station." SAC ¶ 69. However, Lieutenant Yerg was not present on the night of Plaintiff's arrest, so that alleged deprivation could not have resulted from any conspiracy involving Lieutenant Yerg. Ex. 9 at 12:6–14.

A proposed order is attached.

Dated: November 29, 2023

/s/ Constantine J. Themelis

Thomas H. Barnard, Fed. Bar No. 27488
tbarnard@bakerdonelson.com
Constantine J. Themelis, Fed. Bar No. 27303
gthemelis@bakerdonelson.com
Sabrina N. Marquez, Fed. Bar No. 30516
smarquez@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
100 Light Street
Baltimore, MD  21202
Phone:  410-862-1138
Fax:  410-547-0699
**_Attorneys for Officer Defendants_ Lieutenant
Jason Yerg and Sergeant Marlon Koushall**